UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD KLINKMAN and MARIE KLINKMAN,

    Plaintiffs,

v.                                Case No.:  2:23-cv-583-SPC-KCD

TRUIST BANK,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court are Defendant's Motion for Judgment on the Pleadings (Doc. 45) and Plaintiffs' Response (Doc. 46). For the below reasons, the Court denies the motion.

As alleged in the complaint, Defendant was the servicer of Plaintiffs' mortgage. Per the mortgage, Plaintiffs paid flood-insurance premiums into an escrow account. But in July 2021 and 2022, Defendant twice failed to timely pay Auto Club South Insurance Company ("AAA") flood-insurance premiums using the escrow funds. Defendant then sent Plaintiffs a letter stating that proof of flood-insurance coverage had not been received and that Defendant would buy lender-placed flood insurance. On September 14, 2022, frustrated with Defendant, Plaintiffs paid off their mortgage. On September 15, 2022, Defendant sent a letter to Plaintiffs stating that their home was now insured

through American Security Insurance Company ("Assurant"). But Defendant once again did not pay the premium. On September 28, 2022, Hurricane Ian struck and caused over $100,000 in flood damage to the home. Plaintiffs reported the loss and discovered that they were uninsured because of Defendant's failure to pay the premium. Plaintiffs then brought this Real Estate Settlement Procedures Act ("REPSA") action. Defendant argues it is entitled to judgment on the pleadings. (Doc. 45).

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Colony Ins. Co. v. Coastal Constr. Mgmt., LLC*, No. 22-14037, 2024 WL 861254, at *1 (11th Cir. Feb. 29, 2024) (citation omitted). At this stage, the Court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id*.

Defendant argues it is entitled to judgment on the pleadings for two reasons. First, Defendant argues that RESPA is inapplicable because this action does not concern Plaintiffs' principal dwelling. Second, Defendant argues that because the Assurant policy would have automatically cancelled when Plaintiffs paid off their mortgage their loss was not caused by Defendant's failure to pay the premium. Both arguments fail.

First, the primary-dwelling argument. Defendant relies on the implementing regulations of the Truth in Lending Act ("TILA") to argue that RESPA's loan-servicing requirements "apply to closed-end consumer credit transactions secured by a consumer's *principal dwelling*." 12 C.F.R. § 1026.36(b), (c) (emphasis added). This matters because Plaintiffs' suit concerns their second home.

But Plaintiffs do not rely on TILA in their complaint. Plaintiffs sue only under RESPA, specifically 12 U.S.C. § 2605(g) and Regulation X, 12 C.F.R. § 1024 *et seq*. The cited TILA regulation does not mention these provisions and governs different loan servicer conduct. It appears to regulate when and how a servicer must credit a consumer's loan account after receiving a periodic payment for that account. *See* 12 C.F.R. § 1026.36(b), (c). The regulation ensures that a consumer is not charged with a fee or reported to a consumer reporting agency as of the date of receipt of a periodic payment. *Id*. The relevant RESPA provision, in contrast, mandates that if a servicer requires periodic payments into an escrow account to cover insurance premiums, then it shall pay those premiums as they become due. *See* 12 U.S.C. § 2605(g). Plaintiffs do not challenge how Defendant credited their loan account. They do not claim they were charged a fee or reported to a consumer reporting agency. They do take issue, however, with Defendant's failure to pay insurance

3

premiums out of their escrow account as they became due. So the TILA regulation is inapplicable here.

Moreover, the relevant RESPA provision does not distinguish between principal and secondary dwellings. Rather, it expansively applies to "*any* federally related mortgage loan[.]" 12 U.S.C. § 2605(g) (emphasis added). While RESPA's implementing regulations do provide exemptions, none of them are relevant here. *See* 12 C.F.R. § 1024.5(b); *see also* Paul Barron, *Federal Regulation of Real Estate and Mortgage Lending* § 2:5 (4th ed.) ("In addition, there is no requirement [in RESPA] that the one-to four-family structure be the borrower's principal residence. Hence, vacation or second homes would qualify[.]"); Dee Pridgen, *Consumer Credit and the Law* § 9A:14 ("For instance, unlike a TILA 'residential mortgage transaction,' RESPA does not limit itself to loans securing the consumer's principal dwelling, covers rental property or vacation homes so long as there is a dwelling on the property."). Defendant's authorities to the contrary are unpersuasive and provide little to no analysis on the issue.

Second, the argument about Plaintiffs paying off their mortgage. At the pleadings stage, Defendant argued that because Plaintiffs had paid off their mortgage, Defendant was no longer a loan servicer and could not be held liable under RESPA. (Doc. 16). The Court rejected that argument. (Doc. 34). Now that the pleadings have closed, Defendant tries again. Defendant now claims

4

that the Assurant policy would have automatically cancelled when Plaintiffs paid off their mortgage. Plaintiffs' loss was not caused by Defendant's failure to pay the premium, so the argument goes, but the automatic cancellation of their flood policy upon paying off the mortgage.

This argument fails for three reasons. To start, Defendant's argument suffers from tunnel vision. It focuses only on the Assurant policy. But, according to the complaint, Defendant did not timely pay both the AAA and Assurant policies. The AAA policy would have covered September 2022 when Hurricane Ian struck. Defendant did not pay the premium for that policy. And Defendant's failure is what inspired the Assurant policy. So regardless of the Assurant policy's terms, the loss can be attributed to Defendant's failure to pay the premium for the AAA policy.

Defendant's argument also relies on speculation outside the pleadings. Plaintiffs allege in their complaint that "[t]he claim was denied because, according to Assurant, no active flood insurance policy existed for the Plaintiffs' home." (Doc. 1 ¶ 41). The policy did not exist "because Defendant never paid the premium . . . despite having told Plaintiffs otherwise." (Doc. 1 ¶ 42). According to the complaint, Assurant denied Plaintiffs' claim because Defendant did not pay the premium, not because Plaintiffs paid off their mortgage.

Finally, even accepting Defendant's argument that the automatic-cancellation provision matters, Defendant may not have the best reading of the Assurant policy. The policy's cancellation provision provides: "Coverage under this Policy shall automatically and without prior notice, cancel when the **named Insured** no longer has an interest in the **described location**[.]" (Doc. 1-6 at 22) (emphasis in original). The policy lists Defendant as the named insured and Plaintiffs as additional insureds. (Doc. 1-6 at 8). According to Defendant, it no longer had an interest in the home once Plaintiffs paid off their mortgage, so the policy must automatically cancel.

But an endorsement changes the cancellation provision and may affect this analysis. That endorsement states that if the policy has been in effect for 90 days or less (as here), Assurant must give notice of cancellation "20 days before the effective date of cancellation if we cancel for reasons other than nonpayment of premium[.]" (Doc. 1-6 at 26). The endorsement provides two exceptions allowing immediate cancellation "if there has been a material misstatement or misrepresentation . . . or failure to comply with underwriting requirements establish by us." (Doc. 1-6 at 27). The endorsement goes on: "If we fail to give the named insured the 20 days . . . notice, this Policy will remain in effect until . . . [t]he expiration of a period of days after the notice is given equal to the required notice period[.]" (Doc. 1-6 at 27). Plaintiffs paid off their mortgage on September 14, 2022. Hurricane Ian struck 14 days later on

September 28, 2022. Given this timeline, the 20-day notice period could not have passed, and the policy could not have cancelled for reasons other than nonpayment of premium, before Ian.[1]

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Judgment on the Pleadings (Doc. 45) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on March 20, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[1] Admittedly, the endorsement does not expressly delete or replace the provision Defendant relies on. But given the endorsements' expansive application of its notice requirements to cancellations "for reasons other than nonpayment of premium" and two explicit exceptions, the Court doubts that prior notice remains unnecessary when Defendant no longer has an interest in the property. At the very least, the endorsement introduces ambiguity as to how the cancellation provision would apply here and makes Defendant's arguments all the more speculative.